Charles Peterson
Executive Director
Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, New York Bar No. 5414099
Miles Pope, Alaska Bar No. 1508066
Assistant Federal Defenders
Federal Defender Services of Idaho
702 W. Idaho Street, Suite 900
Boise, ID 83702
Telephone: (208) 331-5530
Facsimile: (208) 331-5559
ECF:   Jonah_Horwitz@fd.org
       Christopher_M_Sanchez@fd.org
       Miles_Pope@fd.org

Stanley J. Panikowski, California Bar No. 290663
(*pro hac vice* applicant)
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone:  619.699.2700
Facsimile:  619.699.2701
ECF:    stanley.panikowski@dlapiper.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.,**  )<br>  )<br>Plaintiff,  )<br>v.  )<br>  )<br>**JOSH TEWALT**, Director, Idaho Department  )<br>of Correction; **TYRELL DAVIS**, Warden,  )<br>Idaho Maximum Security Institution; and  )<br>**Unknown Employees, Agents, or Contractors** )<br>**of the Idaho Department of Correction**,  )<br>  )<br>Defendants.  )<br>  )<br>  ) | CASE NO. 1:21-cv-267<br><br>**COMPLAINT FOR EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

COMPLAINT – Page 1

**I.     Nature of the Action**

1.     Plaintiff is a death-row prisoner in Idaho[1] who brings this action under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*; Idaho's Free Exercise of Religion Protected Act ("FERPA"), Idaho Code § 73-402; and the Free Exercise Clause of the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 for violations and threatened violations of his constitutional rights in connection with the State's effort to execute him.

**II.    Justiciable Case or Controversy**

2.     Absent judicial intervention, Plaintiff will be executed in violation of his statutory and constitutional rights.

3.     There is a real and justiciable case or controversy between the parties.

**III.   Jurisdiction and Venue**

4.     This action arises under 42 U.S.C. §§ 2000cc *et seq.*, Idaho Code § 73-402, and 42 U.S.C. § 1983 for violations of the First Amendment to the United States Constitution.

5.     The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights violations), 1367 (supplemental jurisdiction over state law claims), 2201(a) (declaratory relief), and 2202 (further relief).

6.     The Court has personal jurisdiction over Defendants as they are residents of the State of Idaho and are presently located in the State of Idaho, or are elected or appointed officials of the State of Idaho or otherwise acting on behalf of the State of Idaho.

---

[1] Plaintiff refers to Idaho as "Idaho," "the State of Idaho," and "the State." Likewise, throughout this complaint, Plaintiff refers to the Defendants, variously, as "the Defendants," "the State," "IDOC," and other phrases, as appropriate. His use of these expressions does not limit the scope of the claims, which are brought against each and every named Defendant.

COMPLAINT – Page 2

7. Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to the claims have occurred, are occurring, or will occur in the District of Idaho.

8. Venue is further proper because, upon information and belief, Defendants all reside in the District of Idaho.

## IV. Parties

9. Plaintiff Gerald Ross Pizzuto, Jr. ("Mr. Pizzuto") is a person within the jurisdiction of the State of Idaho.

10. Mr. Pizzuto is a prisoner under the supervision of the Idaho Department of Correction ("IDOC").

11. Mr. Pizzuto is confined at the Idaho Maximum Security Institution ("IMSI").

12. Mr. Pizzuto is under sentence of death.

13. As set forth in greater detail below, Defendants are state officials, employees, agents, and/or contractors responsible for developing, overseeing, and/or implementing death by lethal injection in Idaho.

14. Defendant Josh Tewalt ("Director Tewalt") is the Director of IDOC.

15. Defendant Tyrell Davis ("Warden Davis") is Warden of IMSI.

16. Warden Davis is the official executioner of prisoners under sentence of death in the State of Idaho.

17. Upon information and belief, Other Unknown Employees, Agents, and/or Contractors of IDOC are involved in the development and carrying out of executions by lethal injection. Plaintiff does not know the identities of these persons.

18. Upon information and belief, Plaintiff and Defendants are all United States citizens.

19. Defendants are all officials of the State of Idaho.

COMPLAINT – Page 3

20. All of the actions that have been and will be taken by Defendants towards executing Plaintiff and any other actions at issue in this Complaint were or will be taken under color of state law.

21. Defendants are all sued in their official capacities.

## V. Case or Controversy

22. There is a real and justiciable case or controversy between the parties.

23. IDOC has implemented and plans to enforce a policy that infringes on Mr. Pizzuto's rights under RLUIPA, FERPA, and the Free Exercise Clause of the First Amendment.

## VI. General Factual Allegations

24. Mr. Pizzuto incorporates each and every statement and allegation set forth throughout this Complaint as if fully rewritten.

25. Mr. Pizzuto has asked that his spiritual advisor accompany him in the execution chamber when the State of Idaho executes him.

26. Mr. Pizzuto was raised in the Roman Catholic faith and while incarcerated sought out a Christian spiritual advisor.

27. Mr. Pizzuto met his current spiritual advisor, Emil Kolar ("Mr. Kolar"), over thirty years ago.

28. During the course of this decades-long relationship, Mr. Pizzuto has relied on Mr. Kolar for spiritual guidance, comfort, and restoration.

29. In the fall of 1989, Mr. Kolar initiated the process of becoming Mr. Pizzuto's spiritual advisor after Mr. Pizzuto requested a Christian advisor.

30. Since that time, the two have corresponded through letters and Mr. Kolar has made multiple trips to IMSI to meet with Mr. Pizzuto in person and provide him with spiritual encouragement.

31. In 1996, Mr. Pizzuto requested a Christian baptism.

32. Mr. Kolar handled all of the arrangements for the baptism, including liaising with IMSI, and was present during the ceremony, which was held at the prison.

33. When permitted, Mr. Pizzuto and Mr. Kolar have visited several times over the years.

34. Even during the COVID-19 pandemic, Mr. Pizzuto and Mr. Kolar continued to meet via videoconference.

35. IDOC institutional records recognize Mr. Pizzuto's religion as Christian.

36. Medical records also indicate Mr. Pizzuto's religious preference is Christian.

37. Mr. Pizzuto identifies himself as a Christian.

38. Mr. Kolar has been approved by IMSI for contact visits with Mr. Pizzuto as his spiritual advisor.

39. For years, Mr. Kolar has planned to be there for Mr. Pizzuto in the time leading up to and during his execution to provide him with the solace he will need in his final hour.

40. Mr. Kolar is willing to go through any reasonable additional security screenings or background check processes required by IDOC to be allowed in the execution chamber when Mr. Pizzuto is executed.

41. On April 9, 2021, Mr. Pizzuto filed a concern requesting that the prison allow Mr. Kolar to be with him in the execution chamber during his execution.

42. IDOC has refused Mr. Pizzuto's request three times: first on April 30, 2021, again on May 14, 2021, and finally on June 2, 2021.

43. Mr. Pizzuto has a sincerely held belief that Mr. Kolar's presence by his side during his execution in the execution chamber is necessary to maintain Mr. Pizzuto's spiritual fortitude and well-being through in-person prayer and counsel as Mr. Pizzuto crosses the passage between the realm of the living and the dead.

44. IDOC is infringing on Mr. Pizzuto's religious beliefs by refusing him the spiritual comfort of Mr. Kolar in the execution chamber.

45. By statute, the IDOC Director has the power and responsibility to approve the procedures used in an execution. *See* Idaho Code § 19-2716.

46. On March 30, 2021, IDOC published on its website Version 4.0 of the Standard Operating Procedure 135.02.01.001, "Execution Procedures" (hereinafter "the Protocol" or "Version 4.0").

47. The Protocol indicates that it was "approved" on March 30, 2021.

48. The Protocol further indicates that Director Tewalt was the person who "approved" the document.

49. The IDOC Director is responsible for the overall control and implementation of the Protocol, as stated therein.

50. On information and belief, the Protocol took effect on March 30, 2021.

51. On information and belief, the Protocol was developed within the State of Idaho.

52. As of the date of the filing of this Complaint, the Protocol remains published on the IDOC website.

53. The Protocol sets forth procedures for the administration of capital punishment in the State of Idaho.

54. The procedures include specific instructions for carrying out executions of death-sentenced prisoners.

55. The procedures require that all executions occur at IMSI in the Execution Unit.

56. The procedures include specific instructions on who is allowed within the Execution Unit during an execution.

57. In the Protocol, "Execution Unit" refers to the area as a whole where the execution will take place on the IMSI property.

58. Also according to the Procotol, "Execution Chamber" refers to the room within the Execution Unit where the gurney is located and where Mr. Pizzuto will be executed.

59. The Execution Unit includes two witness areas, a chemical room, the execution chamber, a medical team waiting room, and a "staging area."

60. The two witness areas are designated as the State of Idaho's witness area and the prisoner's witness area.

61. The Protocol reserves the State of Idaho witness area for witnesses associated with the State of Idaho, four media representatives, two members of the victim's family, as well as a number of support staff.

62. The Protocol limits those who may be present in the prisoner's witness area to the following: one escort team member, one IDOC liaison, two approved visitors selected by the prisoner, one attorney of record for the prisoner, and one spiritual advisor.

63. The Protocol limits those present in the execution chamber to the following: the prisoner, two escort team members, an interpreter if necessary, the Director of IDOC, and the IMSI Warden or designee.

64. Mr. Pizzuto's execution will not require an interpreter's presence in the execution chamber.

65. The Protocol, on its face, does not allow for the prisoner's spiritual advisor to be present with the prisoner in the execution chamber.

66. It is integral to Mr. Pizzuto's faith and spiritual well-being that Mr. Kolar accompany him in the execution chamber.

67. Barring Mr. Kolar from the execution chamber presents a substantial burden on Mr. Pizzuto's right to exercise his religion.

68. Mr. Pizzuto believes that Mr. Kolar's presence in the execution chamber would provide Mr. Pizzuto with spiritual comfort through prayer and holding his hand or putting a hand on his shoulder as he faces his own mortality.

69. IDOC is capable of making this accommodation.

70. There is enough space in the execution chamber for Mr. Kolar, especially given that Mr. Pizzuto will not require an interpreter, as allowed by the Protocol.

71. Mr. Pizzuto was scheduled to be executed on June 2, 2021.

72. Mr. Pizzuto's execution was stayed until November 2021, pending a commutation hearing.

73. If Mr. Pizzuto does not obtain relief in his commutation proceedings or otherwise, he expects the State of Idaho to pursue his execution.

74. Mr. Pizzuto invokes his statutory and constitutional rights and asks this Court to prevent him from being executed without his spiritual advisor's presence in the execution chamber.

## VII. Claims

### A. First Claim: Executing Mr. Pizzuto Without His Spiritual Advisor in the Execution Chamber Violates the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc)

75. Mr. Pizzuto incorporates each and every statement and allegation set forth in this Complaint as if fully rewritten.

76. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).

77. Under RLUIPA, religious exercise includes any exercise of religion and need not be compelled by or be central to a system of religious belief.

78. Congress has specified that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).

79. RLUIPA provides greater protection for religious exercise than the First Amendment.

80. RLUIPA prevents arbitrary barriers that impede prisoners' religious exercise and protects those institutionalized persons who are dependent on obtaining the government's permission and accommodation.

81. IDOC "receives Federal financial assistance" and is subject to RLUIPA. 42 U.S.C. § 2000cc-1(b)(1).

82. Mr. Pizzuto is an institutionalized person under RLUIPA. 42 U.S.C. § 1997(1), (3); § 2000cc-1(a).

83. Mr. Pizzuto is a Christian who has a sincerely held belief that the presence of his spiritual advisor is necessary to his spiritual well-being.

84. IDOC has refused the request to allow Mr. Pizzuto's spiritual advisor in the execution chamber, thereby substantially burdening Mr. Pizzuto's right to religious exercise.

85. The refusal to accommodate Mr. Pizzuto's sincere religious belief does not further a compelling governmental interest.

86. Excluding Mr. Pizzuto's spiritual advisor from the execution chamber is not the least restrictive means of furthering a compelling governmental interest.

87. Rather, the prison can simply adopt whatever reasonable security screening measures are necessary with respect to Mr. Kolar.

88. RLUIPA makes it clear that a government may need to "incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C. § 2000cc-3(c).

89. The Court should prevent Mr. Pizzuto from being executed without his spiritual advisor's presence in the execution chamber.

**B. Second Claim – Executing Mr. Pizzuto Without His Spiritual Advisor Violates the Free Exercise Clause of the First Amendment (U.S. Const. amend. I, as enforced by 42 U.S.C. § 1983)**

90. Mr. Pizzuto incorporates each and every statement and allegation set forth throughout this Complaint as if fully rewritten.

91. Federal law permits a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983.

92. The First Amendment states that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I.

93. The First Amendment applies to the states through the due process guarantee of the Fourteenth Amendment.

94. Unless justified by a countervailing state interest, a burden on a prisoner's free exercise of religion will result in a violation of the Free Exercise Clause of the First Amendment.

95. There is no valid, rational connection between the State of Idaho's policy of not allowing Mr. Pizzuto's spiritual advisor in the execution chamber and a legitimate governmental interest.

96. Mr. Pizzuto has no alternative avenues of exercising his right to the guidance and comfort of his spiritual advisor in the execution chamber when he is executed.

97. There is no meaningful danger that accommodating Mr. Pizzuto's right to religious exercise will have any sort of significant effect on prison staff or resources.

98. Even assuming there are legitimate security concerns, adequate processes could easily alleviate any such concerns and allow for Mr. Kolar's presence in the execution chamber during Mr. Pizzuto's final hour.

99. Mr. Kolar already has security clearance to have contact visits with Mr. Pizzuto.

100. IDOC has the ability to perform any necessary additional security or background checks into Mr. Kolar.

101. Additionally, the Protocol already contemplates an extra individual in the execution chamber, an interpreter, which Mr. Pizzuto will not require. Thus, there is undoubtedly room for Mr. Kolar in the execution chamber.

102. Mr. Kolar could be in the execution chamber with Mr. Pizzuto during the execution without posing any security risk.

103. Mr. Kolar could be in the execution chamber with Mr. Pizzuto during the execution without jeopardizing IDOC's ability to effectively carry out the execution.

104. There is no ready alternative that can fully accommodate Mr. Pizzuto's right to have his spiritual advisor with him in the execution chamber.

105. Removing Mr. Kolar from Mr. Pizzuto's presence hours before the execution and only allowing Mr. Kolar to witness the execution from the witness room does not constitute a reasonable alternative to securing the comfort and guidance of a spiritual advisor during one's execution.

106. Therefore, the State of Idaho's exclusion of Mr. Pizzuto's spiritual advisor from the execution chamber violates the Free Exercise Clause of the First Amendment.

      **C.**      **Third Claim – Executing Mr. Pizzuto Without His Spiritual Advisor Violates Idaho's Free Exercise of Religion Protected Act (Idaho Code § 73-402)**

107. Mr. Pizzuto incorporates each and every statement and allegation set forth throughout this complaint as if fully rewritten.

108. Idaho's FERPA establishes that the "[f]ree exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral." Idaho Code § 73-402(1).

109. Under FERPA, the "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless that burden is essential to a compelling governmental interest and it is the least restrictive means of furthering that interest. Idaho Code § 73-402(2)-(3).

110. This Court should exercise supplemental jurisdiction over this claim arising from Idaho's statute as it forms a part of the same case and controversy as the federal claims. *See* 28 U.S.C. § 1367.

111. The Protocol prohibits spiritual advisors from being in the execution chamber during an execution.

112. By issuing and enforcing the Protocol, the State of Idaho has placed a substantial burden on Mr. Pizzuto's religious exercise.

113. IDOC cannot offer an adequate justification for placing such a burden on Mr. Pizzuto's right to religious exercise.

114. Declining to allow Mr. Pizzuto's spiritual advisor in the execution chamber does not further a compelling governmental interest.

115. The prohibition is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

COMPLAINT – Page 13

116. The State cannot adequately justify its decision not to allow Mr. Pizzuto to exercise his religious belief that he must have his spiritual advisor physically present with him during his execution.

## VIII. Prayer for Relief

117. In light of the above, Plaintiff respectfully requests that this Court:

   a) Issue a declaratory judgment that the Protocol violates Mr. Pizzuto's rights under RLUIPA, FERPA, and the Free Exercise Clause of the First Amendment;

   b) Enjoin Defendants from executing Mr. Pizzuto until Defendants revise the Protocol to allow the presence of Mr. Pizzuto's spiritual advisor in the execution chamber during the execution;

   c) Authorize appropriate discovery and an evidentiary hearing if necessary to permit Mr. Pizzuto to prove his claims;

   d) Grant any such other relief that is just and proper.

DATED this 24th day of June 2021.

/s/ Christopher M. Sanchez
Christopher M. Sanchez
Jonah J. Horwitz
Miles Pope
Federal Defender Services of Idaho

/s/ Stanley J. Panikowski
Stanley J. Panikowski
DLA PIPER LLP (US)

*Attorneys for Plaintiff*